# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| SIERRA CLUB, and the<br>CARMEL RIVER STEELHEAD ASSOCIATION<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA AMERICAN WATER COMPANY, d/b/a CALIFORNIA AMERICAN WATER,<br><br>Defendant,<br><br>GARY LOCKE, SECRETARY OF THE UNITED STATES DEPARTMENT OF COMMERCE, DR. JANE LUBCHENKO, ADMINISTRATOR of the NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION, and RODNEY McINNIS, REGIONAL ADMINISTRATOR, SOUTHWEST REGION, NATIONAL MARINE FISHERIES SERVICE,<br><br>Named as FRCP 19(a) Necessary Party Defendants. | Case Number C 09-2870 JF<br><br>**ORDER[1] GRANTING MOTION TO DISMISS**<br><br>Re. docket no. 21 |

---

[1] This disposition is not designated for publication in the official reports.

Case No. C 09-2870 JF
ORDER GRANTING MOTION TO DISMISS
(JFLC3)

1

Plaintiffs Sierra Club and Carmel River Steelhead Association ("CRSA") allege that Defendant California American Water Company ("CAW") has wrongfully diverted, and continues wrongfully to divert, water from the Carmel River, and that these diversions cause harm to the South Central California Coast Steelhead ("steelhead"), an endangered species under the Endangered Species Act ("ESA"), 16 U.S.C. § 1531; 16 U.S.C. § 1538(a)(1). Plaintiffs have joined Gary Locke, Secretary of the U.S. Department of Commerce; Dr. Jane Lubchenko, Administrator of the National Oceanic and Atmospheric Administration; and Rodney McInnis, Regional Administrator for the Southwest Region of the National Marine Fisheries Service, all in their official capacities, as necessary party defendants under F.R.C.P. 19(a).[2] Plaintiffs filed the instant action under the citizen enforcement provision of the ESA, 16 U.S.C. § 1540 (g)(1), seeking injunctive relief.

CAW moves to dismiss the action on the bases of abstention, *res judicata*, and primary jurisdiction. For the reasons given below, the motion will be granted, without leave to amend.

## I. BACKGROUND

The following is a summary of the facts, procedural and otherwise, relevant to the disposition of the instant motion. Preliminarily, the Court notes that few, if any, of the facts appear to be disputed.

CAW is an investor-owned, public, Class A water and wastewater utility that provides water service to customers within Monterey County and the unincorporated areas of the Carmel Valley and the Highway 68 corridor. One of CAW's primary sources of water is the Carmel River ("the river"). CAW diverts water from the river itself and also pumps water from the alluvium of the river. Diversion of water from the river began in 1882 at the Carmel Dam. Today, CAW owns and operates two dams along the river–the San Clemente Dam and the Los Padres Dam–under state license. Water stored at the Los Padres Dam, located at river mile 23.5,

---

[2] The parties have stipulated, however, to stay these Defendants' obligations to file responsive pleading pending resolution of the instant motion.

2

is released into the river and re-diverted for use at the San Clemente Dam, located at river mile 18.6.

Among the species of fish found in the river is the anadromous form of *Onorhynchus mykiss*, commonly known as the steelhead. In 1997, and again in 2006, the National Marine Fisheries Service (NMFS), a division of the National Oceanic and Atmospheric Administration ("NOAA"), designated steelhead in the river (and the rest of the South Central California Coast ("SCCC") Distinct Population) as a "threatened Evolutionary Significant Unit." In 2005, the NMFS also designated an area including the river a "critical habitat" for the steelhead.

CAW is regulated by the California Public Utilities Commission ("CPUC"), the State Water Resources Control Board ("SWRCB"), the California Department of Fish and Game ("CDFG"), the Monterey Peninsula Water Management District ("MPWMD"), the California Division of Safety of Dams, and the NOAA (including the NMFS).

Plaintiff Sierra Club is a national nonprofit organization whose members and supporters, among other things, are "dedicated to exploring, enjoying, and protecting the wild places of the earth" and "to practicing and promoting the responsible use of the earth's ecosystems and resources." (Compl. ¶ 4.) For some of the Club's California members, "[t]he presence of steelhead as a natural feature of the river enhances [their] recreational experiences as well as their esthetic [sic] appreciation of the natural beauty of the River and its riparian habitat." (*Id.*)

Plaintiff CRSA is a charitable organization "dedicated to protecting the steelhead population and its habitat in the Carmel River Watershed in Monterey County." (*Id.* at ¶ 5.) CRSA members volunteer their time to rescue steelhead in the river. (*Id.*)

Under California state law, the SWRCB has original jurisdiction over the appropriation of surface waters within the state. In 1987, CRSA filed a complaint with the SWRCB "alleging that Cal-Am diversions from the underflow of the Carmel River are unauthorized and are destroying the public trust resources of the river, including steelhead." (Def.'s Req. for Judicial Notice ("RJN") Ex. 1 at 7.) In 1991, Sierra Club filed a complaint also alleging that CAW's diversions were unauthorized and unreasonable. (*Id.* at 7-8.)

In response to these and other complaints, and following hearings in 1994 at which both

3

Plaintiffs and CAW were provided opportunities to present evidence, the SWRCB issued, on July 6, 1995, Order No. WR 95-10 ("WRO 95-10"). WRO 95-10 found that CAW was diverting water from the river at unauthorized levels. The SWRCB concluded that CAW's diversions "have historically had an adverse effect on: (1) the riparian corridor along the river below [river mile] 18.5, (2) wildlife which depend on riparian habitat, and (3) steelhead and other fish which inhabit the river." (Def.'s RJN Ex. 1 at 28.) Based on these findings and other conclusions, WRO 95-10 mandated CAW compliance with fourteen conditions relating to reduction of its diversions from the river, as well as remediation for and mitigation of the adverse impacts its unauthorized diversions had caused in the past.

In November 1995, Plaintiffs jointly filed a petition for writ of mandate in Monterey Superior Court, challenging several of the conditions contained in WRO 95-10.[3] The petition joined CAW and the MPWMD as interested parties. Thereafter, both CAW and the MPWMD also filed writ petitions in the superior court, and the petitions were consolidated by stipulation by the parties in May 1996. On June 3, 1998, Judge Richard M. Silver entered an order in the consolidated case pursuant to the stipulations of all parties. Among other things, the order modified the conditions of WRO 95-10 that Plaintiffs had challenged in their petition, dismissed all three writ petitions with prejudice, and provided that the Monterey Superior Court "retains jurisdiction . . . to enforce the terms of th[e] [order], and to review compliance by [CAW] with the conditions of Order 95-10 that are the subject of this Stipulation and Judgment." (Def.'s RJN Ex. 4A, at 8.)

In February 1998, "[a]s part of the settlement of the litigation" (Def.'s RJN Ex. 6 at 1), the SWRCB issued WRO 98-04, which modified the conditions of WRO 95-10 in accordance with Judge Silver's order. Then, in 2002, at the request of the NMFS and CAW and after hearings in which Plaintiffs participated, the SWRCB issued WRO 2002-02, which further modified one of the conditions of WRO 95-10. Plaintiffs allege that, despite these modifications,

---

[3]The petition also challenged SWRCB Decision No. 1632, issued on the same day as WR 95-10, which approved an application by the MPWMD and the issuance of a permit to appropriate water from the river via the New Los Padres Project.

4

"the essential terms of [WRO 95-10] remain unchanged." (Compl. ¶ 20.[4])

In 2001, CAW entered into a "Conservation Agreement" with NOAA (NMFS) with the aim of "minimiz[ing] 'take' of Endangered Species Act ('ESA') listed Steelhead in the Carmel River." (Def.'s RJN Ex. 13 at 1.) The agreement set forth short-term, mid-term, and long-term actions designed to achieve this goal. In the years following the agreement, CAW implemented some of the measures in the agreement but for various reasons failed to implement others. In 2006, CAW and NOAA entered into a settlement agreement whereby CAW agreed to continue to implement measures it had begun under the Conservation Agreement and "to provide funding for projects 'to improve habitat conditions for, and production of, SCCC steelhead and/or otherwise aid in the recovery of SCCC steelhead in the Camel River watershed.'" (Compl. ¶ 25.) CAW also agreed to pay $3.5 million in funding initially and $1.1 million each year thereafter. In return, NOAA agreed "to exercise enforcement discretion relative to any potential violation of the ESA committed by CAW involving its pumping operations or water withdrawals from the Carmel River." (*Id.* at ¶ 26; Def.'s RJN Ex. 14 at 5.)

Plaintiff alleges that the 2006 agreement between CAW and NOAA "was never implemented and the funding for the habitat improvement projects was never accomplished." (Compl. ¶ 27.) However, in 2009, CAW and NOAA signed a new agreement, adding the CDFG as a party because of its role as "trustee for California's fish and wildlife resources." The 2009 agreement "contained virtually identical language to the 2006 Settlement Agreement." (*Id.* at ¶ 28.) CAW has paid the initial payment of $3.5 million into a custodial account held by the CDFG to fund projects for habitat improvement for steelhead in the river.

On January 15, 2008, the SWRCB issued a proposed Cease and Desist Order ("2008 Draft CDO") alleging that CAW had made unauthorized diversions from the river in violation of one of the conditions of WRO 95-10. The SWRCB proposed to restrict CAW's diversions from the river "by 15% during the first three years, by 20% for the next 2 years, by 35% for the next to

---

[4]Though the Complaint describes in great detail many of the regulatory and administrative proceedings involving the parties, Plaintiffs make no reference to their petition for writ of mandate or Judge Silver's order in the state court case that disposed of that petition.

5

[sic] years, and by 50% by 2014." (Compl. ¶ 21.) In August 2008, at CAW's request, the SWRCB held a seven-day evidentiary hearing on the 2008 Draft CDO. Both Plaintiffs and CAW, among many other interested parties and agencies, submitted written briefing and were given opportunities to examine and cross-examine witnesses before the SWRCB.

On March 14, 2008, Plaintiffs served notice of their intention to commence legal action, as required under the ESA, on CAW and the Rule 19(a) Defendants. However, Plaintiffs did not file the complaint in this action, requesting both preliminary and permanent injunctive relief, until June 25, 2009. On August 14, 2009, CAW filed the instant motions to dismiss. On August 16, 2009, Plaintiffs notified CAW that they had asked the Court to take their motion for preliminary injunction off calendar. On September 4, 2009, CAW filed the instant objections to Plaintiffs' evidence and motion to strike.

The SWRCB did not take further action regarding the 2008 Draft CDO between the August 2008 hearing and the date Plaintiffs' complaint was filed in this Court. However, on July 27, 2009, the SWRCB issued a revised draft ("2009 Draft CDO"). The 2009 Draft CDO again proposed changes to CAW's permitted diversions from the river and compliance with WRO 95-10, as modified by subsequent orders and the 2009 Draft CDO itself. The precise reduction schedule in the 2009 draft differed from the 2008 draft in that the new draft proposed an immediate reduction in diversion of five percent and annual cumulative reductions in subsequent years. The 2009 Draft CDO also accounted for new water projects aimed at reducing unauthorized diversions from the river and called for CAW to post quarterly reports on its website indicating, among other things, the amount of water it diverts from the river and the amount of water it saves through new projects.

Among the many considerations reflected in the 2009 Draft CDO was the impact of unauthorized diversions on the steelhead population. After praising Plaintiff CRSA and the MPWMD for their steelhead rescue efforts, the SWRCB found that

> rescuing juvenile steelhead and rearing them over the summer cannot assure the recovery of steelhead populations and is not an acceptable long-term solution. . . . [W]e conclude that [CAW] should be prohibited from increasing diversions from the river and should be required to reduce the quantity of water diverted from the river for existing service conditions.

6

(Def.'s RJN Ex. 16 at 43.) On September 2, 2009, the SWRCB held a public workshop on the 2009 Draft CDO. In August, prior to the workshop, and at the invitation of the SWRCB, Plaintiffs and CAW all submitted comments. The NMFS also submitted comments in which it advised the SWRCB to update the CDO to reflect the 2009 Settlement Agreement between the NOAA, CAW, and the CDFG and also "commend[ed] the SWRCB for acknowledging the serious adverse impacts from CAW's diversions on threatened SCCC steelhead and their critical habitat." (Def.'s RJN Ex. 24 at 2.)

On September 16, 2009, the SWRCB sent interested parties to the CDO proceedings, including Plaintiffs and CAW, a Revised Draft Order ("2009 Revised Draft") (http://www.waterboards.ca.gov/waterrights/water_issues/programs/ hearings/caw_cdo/) and scheduled formal consideration of the draft for its meeting on October 20, 2009. (*Id.*)

Following the October 20 meeting, the SWRCB adopted Cease and Desist Order WR 2009-0060 in the Matter of the Unauthorized Diversion and Use of Water by the California American Water Company ("2009 CDO"). The 2009 CDO was adopted based upon, among other things, the Board's determination that CAW had failed to comply with WRO 95-10 and has continued to violate the prohibition against the unauthorized diversion or use of water, and that CAW's diversions adversely affect fish (including the steelhead), wildlife, and the riparian habitat of the river. The 2009 CDO requires CAW to "cease and desist from the unauthorized diversion of water from the Carmel River in accordance with" a specific schedule and set of conditions. (2009 CDO 57.)

Shortly after the adoption of the 2009 CDO, CAW and the MPWMD filed petitions for writ of mandate and complaints for declaratory and injunctive relief in Monterey Superior Court. The MPWMD also filed an *ex parte* application for an immediate stay of the 2009 CDO. On November 3, Monterey Superior Court Judge Kay T. Kingsley entered an interim stay order. On November 17, Judge Kingsley issued an order continuing the stay pending a hearing on whether the stay should be dissolved. That hearing is scheduled for January 27, 2010.

This Court initially heard oral argument by all parties on the instant motion on September 18, 2009. Following discussion on the record regarding the then-pending October meeting of the

7

SWRCB, the Court continued the hearing to December 18, 2009.

## II. LEGAL STANDARD

**A.     Motion to dismiss**

A complaint may be dismissed as a matter of law for only two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984) (citing 2A J. Moore, et al., Moore's Federal Practice ¶ 12.08 at 2271 (2d ed. 1982)). For a motion to dismiss to be granted, it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved. *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987). In addition, leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corrs.*, 66 F.3d 245, 248 (9th Cir. 1995). Conversely, dismissal may be ordered with prejudice when amendment would be futile. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

When a court considers a motion to dismiss, all allegations of the complaint are taken as true and construed in the light most favorable to the non-moving party. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). However, the Court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). A court's review is limited to the face of the complaint, documents referenced by the complaint, and matters of which the court may take judicial notice. *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1483 (9th Cir. 1991); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996).

## III. DISCUSSION

**A.     *Younger* Abstention**

CAW first argues that the Court must dismiss the instant action under the *Younger* abstention doctrine because hearing Plaintiffs' claim would interfere with ongoing state judicial proceedings. *Younger v. Harris*, 401 U.S. 37 (1971); *Beltran v. State of California*, 871 F.2d 777, 782 (9th Cir. 1989) (district court *must* dismiss federal action where *Younger* abstention is

8

appropriate). "Abstention by a district court is *required* under *Younger* when three criteria are satisfied: (1) State judicial proceedings are ongoing; (2) The proceedings implicate important state interests; and (3) The state proceedings provide an adequate opportunity to raise federal questions." *Comm. Telesystems Int'l v. California Pub. Util. Comm'n*, 196 F.3d 1011, 1015 (9th Cir. 1999) (emphasis added). The *Younger* doctrine is properly raised in a motion to dismiss for failure to state a claim upon which relief can be granted. *Kitchens v. Bowen*, 825 F.2d 1337, 1339 (9th Cir. 1987).

In its original motion, CAW urged the Court to dismiss pursuant to *Younger* abstention "in deference to the pending SWRCB [Cease and Desist Order] proceedings." (Def.'s Mot. to Dismiss 22: 4-5.) Now that the SWRCB has issued the 2009 CDO, CAW contends that *Younger* still applies because of the pending state court actions challenging the SWRCB's order.

In their initial opposition to the instant motion, Plaintiffs failed to oppose this ground for dismissal. Nonetheless, at oral argument and in their post-hearing request for judicial notice, Plaintiffs disputed the appropriateness of *Younger* abstention. Having considered Plaintiffs' position, the Court concludes that *Younger* applies.

The first prong of the *Younger* analysis is satisfied when state judicial proceedings are ongoing. *Comm. Telesystems*, 196 F.3d at 1015. This requirement may be met by state administrative proceedings. *See Ohio Civil Rights Comm'n v. Dayton Christian Sch.*, 477 U.S. 619, 629 n.2 (1986) ("The lower courts have been virtually uniform in holding that the *Younger* principle applies to pending state administrative proceedings in which an important state interest is involved.") The critical question is whether the state proceedings were ongoing at the time the federal action was filed. *Beltran*, 871 F.2d at 782. Here, the SWRCB's CDO proceedings began in January 2008. While the Board has issued a final CDO, CAW and the MPWMD have availed themselves of state-court judicial review.

Plaintiffs contend, however, that *Younger* does not apply because the underlying state proceedings are final. They rely upon the Ninth Circuit's discussion of the issue in *San Jose Silicon Valley v. City of San Jose*, 546 F.3d 1087 (9th Cir. 2008). In that case, the court asked the following question: "If a state administrative proceeding is final, *and state-court judicial review*

9

*is available but has not been invoked*, is the state proceeding nevertheless 'ongoing' for purposes of *Younger* abstention?" 546 F.3d at 1093 (emphasis added). After acknowledging a circuit split on the question, the court held that it need not decide the issue because the administrative procedure at issue in fact was ongoing. *Id.* ("Because, here, *the administrative procedure itself is ongoing*, we do not reach the issue." (emphasis in original)).

Plaintiffs' reliance on *San Jose* thus is misplaced. Because CAW has exercised its right to review judicial review in the state court, Plaintiffs' assertion that the Ninth Circuit has "discussed the very situation involved in this case" is incorrect. More to the point, *San Jose* provides no support for the proposition that state judicial proceedings are deemed final where, as here, a CAW has invoked available state-court judicial review of a state administrative proceeding. CAW thus has satisfied the first *Younger* prong.

CAW also has shown that the SWRCB proceedings–and CAW's challenge thereto–implicate important state interests. The SWRCB proceedings involved the regulation of the river's scarce water resources. California has a substantial state interest in regulating the water resources within its borders. *See, e.g., Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 167 (4th Cir. 2008) ("[T]he district court properly found that regulation of ground water effected by the Dewatering Act implicates important, substantial, and vital state interests."); *Sierra Club v. City of San Antonio*, 112 F.3d 789, 794 (5th Cir. 1997) ("The regulation of water resources is likewise a matter of great concern."). Plaintiffs do not dispute this prong of the *Younger* test.

Finally, CAWs have demonstrated that the third prong of *Younger* is satisfied. The third prong asks whether the plaintiff has or had an adequate opportunity to raise federal questions in the state court proceedings. *Comm. Telesystems*, 196 F.3d at 1015. The federal issues need not have been litigated in the state proceeding; the *Younger* doctrine requires only the absence of procedural bars to raising federal issues in the state proceedings. *Id.* at 1020. Plaintiffs concede that the state proceedings provided them at the very least with an opportunity to raise federal questions.

Because it concludes that all three prongs of the *Younger* abstention doctrine are met, the Court must dismiss the instant action for lack of jurisdiction.

10

Case No. C 09-2870 JF
ORDER GRANTING MOTION TO DISMISS
(JFLC3)

**B.  Mootness**

At oral argument, CAW contended that factual developments since the filing of the complaint have rendered Plaintiffs' action moot.  While this argument appears to have some merit, the issue was not briefed, and Plaintiffs thus have not had a full opportunity to respond to it.  In light of the foregoing discussion, however, the disposition of the instant motion does not depend on resolution of the mootness issue.

### IV. CONCLUSION

Good cause therefor appearing, the motion to dismiss is granted, without leave to amend.[5]

**IT IS SO ORDERED.**

DATED: 1/8/09

_____
JEREMY FOGEL
United States District Judge

---

[5] CAW also has filed various objections to Plaintiffs' evidence and requests for judicial notice.  These objections are moot in light of the foregoing disposition.
CAW also asserted other grounds for its motion, including *res judicata*, primary jurisdiction, and additional abstention doctrines.  Because it is required to abstain under *Younger*, the Court does not reach those issues.

11